UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
ADAM GROVES and MICHAEL DUNN,                **COMPLAINT**

                    Plaintiffs,

                    08 cv 1694
   - against -               Judge Preska

RONALD FIORINA, MARK FIORINA,
BOYLAN BOTTLING COMPANY, INC

                 **JURY TRIAL DEMANDED**

                 Defendant(s).
---------------------------------------------------------X

The plaintiffs, complaining of the defendants, by their attorney, FRED LICHTMACHER, ESQ., respectfully show to this Court and allege:

## JURISDICTION

1    Jurisdiction is founded upon the existence of a Federal Question in that the instant matter is premised upon violation of the Copyright Act of 1976, as amended, 17 U.S.C. § 101 et seq 17 U.S.C. § 502

2    Venue is appropriate pursuant to 28 U.S.C. § 1391 (b) (2) in that a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of New York.

3    That this Court has jurisdiction to hear plaintiffs' state claims pursuant to 28 U.S.C. Section 1367.

## PARTIES

4    That the plaintiff, ADAM GROVES, is a resident of Los Angeles County in the State of California.

5    That the plaintiff, MICHAEL DUNN, is a resident of Hudson County in the State of New Jersey.

6    Upon information and belief, that at all times hereinafter mentioned, defendant BOYLAN BOTTLING COMPANY INC (Boylan) is a corporation organized under the laws of the State of New Jersey, with corporate office headquarters at 7 Purcell Court, Moonachie, New Jersey, 07074.

7      Upon information and belief, that at all times mentioned herein, Boylan was an organization engaged in the production and bottling of soft drinks for distribution and sale.

8      Upon information and belief, that at all times hereinafter mentioned, defendant Ronald Fiorina was the Chief Executive Officer of Boylan.

9      Upon information and belief that at all times hereinafter mentioned, defendant Mark Fiorina was the Chief Financial Officer of Boylan.

## STATEMENT OF FACTS

10     On or about September 27, 2006, defendant Ronald Fiorina contacted plaintiff Michael Dunn, a freelance marketing agent, at Dunn's and Grove's place of employment in the SOHO District of Manhattan, New York, and requested a meeting to discuss developing a drink and for Dunn to assist him in designing a label as well as to consult on the name of the product and on the bottle design.

11     On or about October 2, 2007, Ronald Fiorina and Dunn met in Manhattan, where Ronald Fiorina explained to Dunn that Boylan was at that time planning to launch a new line of soft drink beverages, under the working title "Better for You," with an estimated launch date sometime in April of 2007 and that the product line would later become known as the "Mash" product line.

12     Beginning on or about October 3, 2006, Fiorina sent Dunn sketches and rough examples of the style of bottle he envisioned his company's new product would have.

13     On or about October 3, 2006, Dunn contacted plaintiff Groves, a graphic designer, and the two plaintiffs agreed to work together to submit a bid and to be partners in the project for Boylan.

14     On or about October 16, 2006, Fiorina requested that Dunn submit a bid for plaintiffs' work.

15     On or about October 18, 2006 Dunn gave Fiorina an estimated fee for plaintiffs' work of between $9,500.00 and $11,500.00.

16      On or about October 23, 2006, Fiorina responded stating that the quote is "fair."

17      However, on or about October 26, 2006, Fiorina emailed Dunn and told him, "the problem is in the $10,000.00 price tag," and added that for that price, defendant Mark Fiorina would stay with the current graphic designer.

18      Discussions regarding the price continued, and, on or about November 21, 2006, the parties agreed that defendants would pay plaintiffs the sum of $1,000.00 to cover only the creative development costs for the initial proposal of three concepts to be submitted.

19      Plaintiffs were informed they were in contention with two other designers who were seeking to be Boylan's graphic designers.

20      Fiorina told Dunn that he could get the plaintiffs close to the original quoted amount, and that if he liked their work on the first project, there would be more work to come.

21      On or about November 27, 2006, Fiorina sent plaintiffs a check in the amount of $1,000.00 to cover the creative development costs only.

22      On or about December 9, 2006, in accordance with the November 21, 2006 agreement, plaintiffs submitted a series of proposed designs to defendants at defendants' corporate headquarters in Moonachie, New Jersey.

23      On or about December 19, 2007, Fiorina contacted the plaintiffs and requested modifications of their plans and informed them they were "still in contention."

24      On or about January 11, 2007, Fiorina indicated to plaintiffs that they were close to securing the project and that, he estimated, defendants would be able to pay a price "close to the original quote provided" and he gave the plaintiffs a check in the amount of $1,500.00 to cover further creative development costs only.

25      On or about January 20, 2007, plaintiffs sent defendants three proposed designs for the Mash product labels.

26     On or about January 22, 2007, Dunn met with Ronald and Mark Fiorina at Ronald Fiorina's home in Hoboken, New Jersey where Dunn discussed the three proposed designs with both the Fiorinas.

27     On or about January 23, 2007, Ronald Fiorina told Dunn that the defendants had chosen one of their particular designs.

28     On or about January 23, 2007, at Ronald Fiorina's request, Dunn emailed Fiorina the high resolution file of the design he had indicated was the chosen design.

29     On or about January 25, 2007, Ronald Fiorina acknowledged receipt of the email which included the high resolution design.

30     On or about February 7, 2007, Dunn and Ronald Fiorina met again at Fiorina's residence in New Jersey and discussed alterations to the design.

31     Later in this meeting, Dunn reminded Fiorina that the cost was $10,000.00 for the designs which were at that point almost entirely completed and in defendants' possession.

32     Ronald Fiorina now indicated that this price was too high and told Dunn that for that price he could "take the artwork off the table."

33     Dunn henceforth withdrew plaintiffs' design from the bidding, so informing Ronald Fiorina.

34     Ronald Fiorina, however, then told Dunn that he wanted to keep the label and that his brother, Mark Fiorina, should be consulted as to the price Boylan was willing to pay.

35     On or about February 9, 2007, Dunn wrote to Mark Fiorina requesting he accept plaintiffs' proposed price.

36     On or about March 6, 2007, Ronald Fiorina contacted Dunn and attempted to engage him in the bidding process once again.

37     As the defendants indicated they were not willing to pay the plaintiffs in the price range plaintiffs had indicated their work would cost, and which defendants had indicated they were

willing to pay, on March 12, 2007, Dunn informed Ronald Fiorina via email that plaintiffs were no longer available to bid on the project.

38   In response to Dunn's email, Ronald Fiorina indicated that, should plaintiffs refuse to make adjustments to their designs and submit them, defendants would use plaintiffs' designs in their current form and have them adjusted by an alternative graphic designer.

39   On or about March 16, 2007, Dunn wrote to Ronald Fiorina reminding him that plaintiffs alone owned the rights to the designs in question and that under no circumstances were defendants to use these designs in any way shape or form.

40   On or about March 28, 2007, Ronald Fiorina sent Groves a letter asking Groves to continue work on the design.

41   Groves declined via letter.

42   On or about July 30, 2007 Dunn discovered that bottles of the Mash product bearing labels with virtually the exact design created by the plaintiffs were being offered for sale in several stores in New York City.

43   There is not now and there never has been a written contract granting ownership or a license to use the label design to the defendants.

44   The plaintiffs only entered negotiations with the defendants due to the defendants having offered the possibility of plaintiffs working on several lucrative projects for them and due to the defendants having informed the plaintiffs the fee plaintiffs proposed for the initial project was reasonable.

45   That the plaintiffs offered to license their label for the Mash product at the low fee of $10,000, due to defendants disingenuously stating to plaintiffs that they had other projects for them to work on, when in fact, this was stated merely to lure plaintiffs into providing their work at a below market rate.

46   That to this date the defendants continue to illegally use plaintiffs' labels on several of their products.

47	That the copyright for the labels defendants are using is owned by the plaintiffs.

### AS AND FOR A FIRST CAUSE OF ACTION
### ON BEHALF OF PLAINTIFFS
### VIOLATION OF THE COPYRIGHT ACT OF 1976,
### AS AMENDED, 17 U.S.C. § 101 et seq.

48	Plaintiffs repeat, reiterate and reallege each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

49	That the plaintiffs' rights have been violated under the Copyright Act of 1976 as amended, 17 U.S.C. § 101 et seq, via an infringement of their copyright for the label designs owned by plaintiffs and illegally used by Boylan.[1]

50	That the labels used by defendants were not works made for hire in that although a contract was negotiated between the parties, no proposed contract was performed on by the defendants, who verbally rejected the plaintiffs' proposed contract which could have arguably made the contested labels a works made for hire.

51	That pursuant to 17 U.S.C.§ 203 (4) plaintiffs legally terminated the proposed transfer of the license to defendants.

52	That the label designs illegally used by the defendants are both original and creative.

53	That the plaintiffs' label is entitled to copyright protection as a graphic work under 17 U.S.C. § 102(a)(5).

54	That the plaintiffs have valid ownership of the design on the label and that the defendants are illegally copying constituent elements of the work that are original and using them without plaintiffs' permission and without plaintiffs being compensated.

55	That the plaintiffs are not employees of the defendants.

56	That at no time did the parties sign an agreement designating the label to be a work made for hire.

---

[1]	**Exhibit "A" is the design defendants originally considered.**
	**Exhibit "B" is the plaintiffs' first proposed labels.**
	**Exhibit "C" is the plaintiffs last proposed labels.**
	**Exhibit "D" is the labels defendants are currently using.**

57    That the plaintiffs, as a matter of law, own a valid copyright, defendants' had access to the copyrighted work, and there is a substantial similarity between the copyrighted work and the labels defendants used.

58    That the plaintiffs have been pecuniarily damaged by the defendants' acts.

59    That the plaintiffs are entitled to the defendants' profits received due to their illegal use of plaintiffs' copyright.

60    That by the defendants infringement of plaintiffs' valid copyright, the plaintiffs have been damaged in the amount of $300,000.00 (THREE HUNDRED THOUSAND DOLLARS) each.

**AS AND FOR AN SECOND CAUSE OF ACTION**
**ON BEHALF OF PLAINTIFFS**
**FRAUD**

61    Plaintiffs repeat, reiterate and reallege each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

62    That the defendants have defrauded the plaintiffs into performing work for them under false pretenses when they in fact knew, *ab initio*, they would not be paying them what they requested for their work and the defendants knew they would not be offering them future projects as they disingenuously proposed.

63    That the defendants defrauded the plaintiffs into providing them with high a resolution copy of the Mash design now in use by the defendants with no intention of paying them what they knew plaintiffs required for a license to use the design plaintiffs own.

64    That by reason of the aforesaid, the plaintiffs have been damaged in a sum not to exceed FIVE HUNDRED THOUSAND ($500,000.00) DOLLARS, (each) and that they are entitled to an award of punitive damages.

**AS AND FOR A THIRD CAUSE OF ACTION**
**ON BEHALF OF PLAINTIFFS**
**CONTRACT IMPLIED IN FACT**

65    Plaintiffs repeat, reiterate and reallege each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

66    That the defendants have breached the contract implied in fact between themselves and the plaintiffs that arose due to the conduct of the parties.

67    That the plaintiffs performed on the contract implied in fact and have been pecuniarily damaged by so doing in that they were not given the consideration due to them.

68    That by reason of the defendants breach of the contract implied in fact, plaintiffs have been damaged in the amount of the reasonable market value of their work.

69    That by the defendants breach of the contract implied in fact, the plaintiffs have been damaged in the amount of $300,000.00 (THREE HUNDRED THOUSAND DOLLARS) each.

**WHEREFORE**, plaintiff demands judgment against the defendants in a sum not to exceed $300,000.00 (THREE HUNDRED THOUSAND DOLLARS) on their First Cause of Action and in the amount of FIVE HUNDRED THOUSAND ($500,000.00) DOLLARS, and that they are entitled to an award of punitive damages on their Second Cause of Action; in a sum not to exceed $300,000.00 (THREE HUNDRED THOUSAND DOLLARS) on their Third Cause of Action, together with costs and disbursements of this action; a trial by jury of all issues involved in this complaint; and such other and further relief as this Court may deem just and proper under the circumstances.

Dated: February 18, 2008
       New York, New York

                                  FRED LICHTMACHER (FL-5341)
                                  Attorney for Plaintiffs
                                  The Empire State Building
                                  350 5th Avenue Suite 7116
                                  New York, New York 10118
                                  (212) 922-9066